# CHARLESTON.

## State *v.* Harris.

Submitted January 31, 1911.   Decided April 25, 1911.

Criminal Law—*New Trial—Disqualification of Juror.*

> The general rule, inhibiting allowance of a new trial for matter constituting a principal cause of challenge to a juror, existing before the juror was elected and sworn, unknown to the complaining party until after verdict, not disclosed on a thorough *voir dire* examination, and undiscoverable by the exercise of ordinary diligence, unless it appears from the whole case that the complainant suffered injustice by reason of the disqualification; applies in criminal cases and to disqualification by reason of relationship to the prosecuting witness.   (pp. 244-250).

(Poffenbarger, Judge, dissenting).

Error to Circuit Court, Marshall County.

Melvin Harris was convicted of unlawful shooting, and brings error.

*Affirmed.*

*D. B. Evans* and *James T. Miller,* for plaintiff in error.

*William G. Conley,* Attorney General and *J. O. Henson,* Assistant Attorney General, for the State.

Poffenbarger, Judge:

Melvin Harris, convicted of unlawful shooting, complains of the verdict principally on the ground of the disqualification of one of the jurors, by reason of his relationship to the wife of the prosecuting witness.   The juror was examined as to his qualification and denied relationship, but it was ascertained, after verdict and before judgment, that it existed.   Numerous affidavits were taken in support of the motion for a new trial, tending strongly to prove that he was not ignorant of the disqualifying fact.   His affidavit, still protesting his ignorance thereof, was filed in resistance of the motion.   Rulings of the court on certain instructions are also complained of.

The general rule applicable to motions for new trials, based upon disqualification of jurors, is stated by Judge Snyder in *Flesher* v. *Hall,* 22 W. Va. 44, as follows: "The verdict will

not be set aside for objections to jurors on grounds which existed before they were sworn, unless it is made to appear that, by reason of the existence of such grounds, the party objecting has suffered wrong or injustice." This has been applied in cases in which jurors would have been excluded, because of their having made up and expressed opinions as to the guilt or innocence of prisoners, had they admitted the fact on their *voir dire* examinations. *State* v. *McDonald,* 9 W. Va. 456; *State* v. *Baker,* 13 W. Va. 158; *State* v. *Greer,* 22 W. Va. 800; *State* v. *Howe,* 26 W. Va. 110; *State* v. *Harrison,* 36 W. Va. 729. It was also applied in one case in which a juror was disqualified by relationship, a fact not known to the prisoner before the trial, denied by the juror on his examination and afterwards discovered. *State* v. *Williams,* 14 W. Va. 851. A like application of the general rule has been made by some courts of other states. *State* v. *Congdon,* 14 R. I. 458; *Traviss* v. *Commonwealth,* 106 Pa. St. 597.

Relationship is a common law disqualification and the principle upon which it stands is very similar to that under which persons interested in one side or the other of a controversy are excluded. Its natural tendency and effect is to create bias and partiality in favor of the related party, and it is a maxim of the law that triers of questions of fact must be impartial and unbiased. For this reason relatives to parties to trials are not permitted to act as jurors. On the same principle, the constitutions and statutes of some states prohibit them from sitting as judges, to ascertain and apply the law to the facts, a matter as to which errors are correctible by appeal. It is a personal disqualification, based upon the most harmful and insidious element conceivable. "Blood is thicker than water," and it is utterly impossible for any person to determine how far the judgment or action of a person affected by it may be swayed or controlled. It operates upon the mind and heart of the individual secretly and silently. Its operation is not disclosed by any outward manifestation other than the result. It is utterly impossible to look into a man's mind and see its operation. Its effect is not general, like many other disqualifications. It is purely personal, operating between the related parties and to the prejudice of all others. In this respect, it is wholly unlike many other disqualifications, relating to the character and standing of the

juror, such as age, lack of citizenship, residence or property qualifications. A man disqualified in any of these particulars, may nevertheless be intellectually and morally as suitable and desirable as any other man not so affected. But one who has an interest in the subject matter of the litigation or is related to one of the parties, is palpably and wholly unfit for service as a juror. His disqualification is particular, not general, and extends into the litigation itself. For these reasons, it seems to me, it ought to be excepted from the general rule, and, in some states, it is sufficient to set aside a verdict, if unknown to a prisoner who has not waived it by lack of diligence. *Smith* v. *State,* 59 S. E. 311; *State* v. *Williams,* 9 Hous. (Del.) 508; *Hudspeth* v. *Herston,* 64 Ind. 133; *Pearcy* v. *Ins. Co.,* 111 Ind. 59; *Coal Co.* v. *Persons,* 39 N. E. 214; *Gardner* v. *Arnett,* 50 S. W. 840; *Tarpey* v. *Madsen,* 26 Utah 294; *Bailey* v. *McCauley,* 13 A. & E. 815; *Jewell* v. *Jewell,* 84 Me. 304; 18 L. R. A. 473; *Cameron* v. *Railway Co.,* 32 Ont. 24. In *State* v. *Williams,* 9 Hous. 508, the court said: "By the common law (and we have no statute on the subject) any one related by blood or marriage, as remotely as the ninth degree even, to a party in a trial, is subject to challenge *propter affectum,*—that is, on account of the likelihood or suspicion of bias or prejudice,—and no evidence to the contrary will be heard. The fact constitutes disqualification. It is evident, therefore, that an impartial trial, in contemplation of law in civil cases, cannot be had where such kinship exists, nor by the constitution in criminal cases, treating the victim as in the light of a party." A valuable note to *Jewell* v. *Jewell,* 18 L. R. A. 473, shows the distinction here insisted upon has been made in many courts. The annotator says: "The want of purely statutory qualifications, such as citizenship, age, property, etc., which do not go to make up the necessary qualities to enable a juror to perform his duty with intelligence and impartiality, have never been treated with the same strictness as objections for bias, criminality, and like causes." He then cites a long list of cases to sustain this obviously reasonable and just proposition.

In classing disqualifications on account of relationship and interest with others, this Court has never at any time discussed their peculiarity in respect to nature and character. In *State* v. *Williams,* 14 W. Va. 851, the Court followed *State* v. *McDon-*

*ald,* 9 W. Va. 456, involving a disqualification of an entirely
different kind, without any inquiry whatever as to whether the
rule ought to be the same in the two classes of cases.   More-
over, the assignment of error based upon it in that case was dis-
posed of in a single short paragraph.   Its summary disposition
may be due to the fact that a new trial was granted upon other
grounds, wherefore it was unnecessary to give the assignment
extensive and careful consideration.   In *Traviss* v. *Common-
wealth,* 106 Pa. St. 597, in which relief was denied on account
of relationship of a juror, the facts were peculiar and entirely
different from those disclosed by this record.   It was made clear
that the juror did not know of the relationship for several days
atfer the verdict and had never seen the murdered woman or
heard of her.   That made it extremely improbable that the re-
lationship had in any way influenced his conduct on the jury.
The burden was recognized as having rested on the State to
show no injury and as having been discharged by the facts dis-
closed.   In *State* v. *Congdon,* 14 R. I. 458, the court said: "We
do not think we ought to grant a new trial simply on account of
the relationship, in view of the fact that the relationship was so
remote, and that the juror himself swears that he was ignorant
of it and is corroborated in so swearing, without some more
counter evidence than we have, and without some better reason
than we have for thinking that the prisoner suffered an actual in-
jury from the presence of the juror on the panel."   Here also
the court rested its decision upon the peculiar facts and circum-
stances of the case, and treated the state as being subject to the
burden of proof.   There are very few instances of the denial of
relief on this ground that are not disposed of in a similar man-
ner.   I think, therefore, that the great weight of authority marks
and recognizes the distinction I have mentioned.

Under the general rule, relief is denied unless the applicant
for a new trial can show injury or injustice resulting from the
irregularity.   What amounts to injustice or injury in such a
case and how can it be shown?   Under general principles of law,
an undue advantage of one of the parties over the other in a trial,
acquired in any way, other than by the negligence, waiver, agree-
ment or fault of the complaining party, has always been regard-
ed as an intolerable injustice and as constituting sufficient

ground for the vacation of judgments and setting aside of verdicts. Disqualification in a juror from lack of citizenship, statutory age, ownership of property and the like, does not naturally give such an advantage, and there is therefore good reason for requiring something more of the applicant in such cases. Until more is shown, no injustice appears. But, when the disqualification arises from interest or relationship, the injustice is apparent on the face of the record and nothing more should be required. This is a disqualification that obviously goes into the very trial of the case and in nature and reason operates prejudicially. When that appears, the burden should be upon the opposite party to show, as in the cases of *Traviss* v. *Commonwealth* and *State* v. *Congdon,* circumstances which negative the probability of injury. That is the rule applied by this Court in cases of misconduct on the part of a jury, a thing naturally calculated to work prejudice and injury. Misconduct on the part of a jury presumptively vitiates the verdict. *State* v. *Cotts,* 49 W. Va. 615; *State* v. *Harrison,* 36 W. Va. 729; *State* v. *Robinson,* 20 W. Va. 713; *State* v. *Cartwright,* 20 W. Va. 32. It does not seem to me that there can be the shadow of a doubt that misconduct of a jury in the trial of a case and disqualification by reason of interest or relationship naturally stand upon the same ground and ought to be governed by the same rule. *Prima facie,* each amounts to injustice in the trial, and, if there is any difference, the rule ought to be the more strict in cases of such disqualification. Irregular conduct on the part of a juror does not, on its face, naturally import advantage to either party. It is entirely consistent with an altogether different hypothesis, but disqualification of the kind here considered naturally imports an advantage to the related party. To require any further evidence of injury is to ask that which universal law makes impossible. No court will permit jurors, by their own testimony, to impeach their verdict. Their testimony will be received as to facts and circumstances, bearing upon the inquiry as to the effect of misconduct, but not as to whether the inculpating facts had any influence or effect upon their conclusion. To this rule there is scarcely any exception. *Pickens* v. *Boom Co.,* 58 W. Va. 11; *Graham* v. *Bank,* 45 W. Va. 701; *State* v. *Cobbs,* 40 W. Va. 718; *State* v. *Harrison,* 36 W. Va. 729; *Bartlett* v. *Patton,* 33 W. Va.

71; *Probst* v. *Breaunlich,* 24 W. Va. 356; *State* v. *Cartwright,* 20 W. Va. 32; *State* v. *Robinson,* 20 W. Va. 713. It is sometimes said a verdict will not be set aside for disqualification of a juror, if, upon an examination of the record, no erroneous ruling of the court or insufficiency of the evidence can be discovered. I do not know that this Court has ever assigned such a reason for refusing a new trial for such cause. Injustice or injury from erroneous rulings of the trial court stands upon an entirely different basis. It has no connection in law or reason with injury resulting from a biased juror. This alone condemns the application of any such a test, but a still better reason can be given for not applying it. The question submitted to the jury is one of fact and the verdict cannot be disturbed in the absence of errors of law. It is unalterable and irrevocable. In this respect it differs vitally from findings as to law. Errors of the latter kind are always correctible by appeal. To give a litigant an unfair jury is, therefore, ruinous to him. The jury may find either way, in a case of conflicting evidence, and there is no possible relief from its decision, if the trial court has not erred as to the law. Hence, it is clear that mere sufficiency of evidence to sustain a verdict constitutes no reason for saying injustice or injury has not been done. An unbiased juror might have found the other way and his verdict become unalterable and conclusive. The litigant has a legal right, in such cases, to the deliberation and determination of an impartial and unbiased juror, and not only of one such juror, nor eleven, but twelve men of that class. To deprive him of the legal right to an unbiased and impartial finding on the evidence, which may be in his favor, is to inflict upon him injustice of the rankest kind, if he has not in some manner waived the departure from the legal course of procedure. Some courts say the question of a new trial for such cause is addressed to the discretion of the trial court. So we say of every application for a new trial, but never that it is made to an arbitrary discretion. That discretion is a sound reviewable discretion, and the exercise thereof is set aside, when it conflicts with law.

For these reasons, I would reverse the judgment and grant a new trial. The evidence submitted upon the motion makes it almost certain that the juror in question knew he was related by affinity to the prosecuting witness. There was no lack of

diligence on the part of the prisoner. This juror was tested upon his *voir dire* as to his qualification and denied the relationship. Not a thing in the evidence indicates that the prisoner knew or had any reason to suspect the disqualifying fact, until after the verdict had been rendered against him. A majority of the Court, however, are unwilling to grant a new trial. They say the case falls under the general rule and are unwilling to distinguish between disqualification by relationship and the ordinary statutory disqualifications. This puts on the prisoner the burden of showing that he was injured and they are of the opinion that he has not shown it.

Though nothing is said in the argument for the prisoner about the rulings upon instructions, we have examined them and find no error therein. They are in perfect harmony with principles often declared by this Court. The conclusion of defendant's instruction No. 5, saying "If the jury from the evidence have any doubt as to the guilt of the accused, then evidence of his good reputation for peace and good order may be allowed to resolve the doubt in his favor and work his acquittal," was modified by striking out the words "and work his acquittal." This modification did not materially alter the instruction nor deprive it of any of its force or effect. "To resolve the doubt in his favor" means the same thing as "work his acquittal." We cannot reverse a trial court for a mere change of the phraseology of an instruction, which does not alter its meaning.

For these reasons, the judgment will be affirmed.

*Affirmed.*


BRANNON, JUDGE.

Four of the five judges of this Court decline to set aside the verdict because of the relationship of a juror to a witness for the State. The juror was second cousin to the wife of the witness. It is against public policy to frustrate criminal trials, unless substantial harm to the accused appears. It brings criminal proceedings into derision. I would justify our action by a rule long established in Virginia and this state. It is given in *State* v. *Harrison*, 36 W. Va. 729. Older cases there cited will show how far back the rule runs. "A new trial will not be

granted in a criminal case for matter that is a principal cause of challenge to a juror, which existed before he was elected and sworn as a juror, but which was unknown to the prisoner until after the verdict, and which could not have been discovered by the exercise of ordinary diligence, unless it appear from the whole case that the prisoner suffered injustice from the fact that such juror served in the case. In determining this the court should look only to the evidence touching such cause of challenge; not to the evidence on the trial as to the prisoner's guilt." We cannot ignore this rule so long followed, and so essential to the efficacy of criminal procedure. It is not made to appear that the accused suffered from the presence of the juror on the jury, unless we can deduce it from the fact of such relationship, and we cannot. If in any case the accused cannot prove harm, it is his misfortune. There stand the verdict and judgment, and error must be made to appear.