Cora Lea WAGERS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13043.

Court of Criminal Appeals of Oklahoma.

April 4, 1962.

Miller & Miller, Tahlequah, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Cora Lea Wagers as plaintiff in error herein, defendant below. As defendant, she was charged by information in the district court of Cherokee County, Oklahoma with the murder of James Calvin McGowan, allegedly committed on May 30, 1957 in said county and state. The crime was committed by shooting the decedent in the temple with a .22 rifle while he was either asleep or had passed out. She was tried by a jury, convicted and her punishment fixed at life imprisonment in the penitentiary. Judgment and sentence was entered accordingly.

The sufficiency of the evidence is not attacked on this appeal. As an aid to understanding of the case the facts, very briefly, disclose that the defendant and the decedent, a drunken bootlegger, were living together out of wedlock. The decedent was abusive to the defendant, and had been for a long time, subjecting her to severe beatings, one immediately before the killing, in which he threw whiskey in her face, in addition to striking her with a chair. She related she was afraid, by reason of his threats of death, to report the long train of abuses to the police. She admitted that: "when I was in the kitchen, after I had finished getting supper, I decided to shoot him. I decided to kill him. I got a bolt action, single shot .22 rifle which was hanging up by the front door. It was loaded; I checked to see if it was. I then shot him by putting the end of the barrel about half to one foot from the right side of his head. I shot him in the temple. * * *"

The confession was amply corroborated by independent evidence. The facts clearly established a case of cold, premeditated murder.

The sole questions raised on this appeal are, first, as to the lack of legal qualifica-

tions of the jury foreman, Donald A. Napier to serve on the jury; and, second, for the reason that he was biased and prejudiced against the defendant.

The first contention is based upon the proposition that the jury foreman, Donald A. Napier, was not qualified as by law provided to serve on the jury. Title 38 O.S. 1961 § 28 provides that citizens are eligible to serve on a jury "who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary for the commission of a felony * * *."

It is contended that foreman Napier was convicted in Iowa on December 17, 1959 on the following charge:

"* * * introducing and delivering for introduction into Interstate Commerce, drugs and leaflets, misrepresenting and misbranding said articles in violation of sections 331 and 335, Title 21, United States Code, as charged in counts 1, 3, 5 and 6 of the information. * * *"

The court's judgment against Napier read in part as follows:

"* * * The defendant is hereby committed to the custody of the Attorney General, or his authorized representative, for a period of one (1) year, and for a period of one (1) year on each of said counts 3, 5, and 6. The serving of said sentences on counts 3, 5 and 6 shall run concurrently with and not consecutively to each other, and concurrently and not consecutively to the sentence imposed on Count 1. The serving of said sentence is hereby suspended and the defendant is placed on probation for a period of four (4) years. * * *"

The penalty provision under the aforesaid federal statute reads as follows:

"Any person who violates any of the provisions of section 331 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a

fine of not more than One Thousand Dollars ($1,000.00) or both such imprisonment and fine."

■ Both under the provisions of the statute and Federal Court decisions the conviction complained of is neither a felony nor an infamous crime. Kempe v. United States, 8 Cir., 151 F.2d 680; Falconi v. United States (6 Cir.) 280 F. 766; Rossini v. United States (8 Cir.) 6 F.2d 350; Brede v. Powers, 263 U.S. 4, 44 S.Ct. 8, 68 L.Ed. 132, 18 U.S.C.A. § 541. See also 22 C.J.S. Criminal Law § 3, note 95–96, pp. 10 and 11; 42 C.J.S. Indictments and Informations § 9, pp. 841–842, notes 81–82 and 83.

Under the provisions of our statute, 38 O.S.1961 § 28, it is apparent that the conviction of one in Iowa of a misdemeanor in the Federal Court as herein established, did not constitute a basis for legal disqualification for jury service of Napier in Oklahoma. It must necessarily follow a misdemeanor case, in view of the fact, it has been held since we have no express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in a penitentiary of another state, such conviction and sentence can have no effect, by way of penalty or of personal disability or disqualification beyond the limits of the state in which the judgment was rendered. John v. State, 79 Okl. Cr. 50, 151 P.2d 808.

■ If such be the law as applied in felony cases, the rule would be all the more applicable in case of misdemeanor convictions. The defendant's contention in this regard is without merit.

On the contention that Donald A. Napier was prejudiced against the defendant, the testimony is wholly void of any expressed prejudice against this defendant. In fact, the record conclusively shows that Donald A. Napier did not know either of the parties to the killing. The record does disclose that he had some conversation with Claude Berry before the trial to the effect that too many business men were being excused from jury service. There was innuendo and surmise by Mr. Berry to the effect that Donald A. Napier said that if he got on the jury there would be some convictions but it appears from the uncontradicted record that that conversation was in regard to breaking and entering or burglary of business houses, and Mr. Napier said if those who did so were not convicted, then they might as well dispense with the police. There was no conversation about Cora Lea Wagers, but the uncontradicted evidence on cross-examination by defense counsel disclosed that Napier was "not in favor of convicting anyone who was innocent". The record shows that none of the jurors were in favor of acquittal, and that the polled jury established that the verdict was unanimous for life imprisonment.

Complaint is made that Mr. Napier may have influenced some of the jurors, which was his right and privilege as a juror, but the record on cross-examination shows that he had no more influence than any of the other jurors. The attempt to establish expressed prejudice within the purview of Stevens v. State, 94 Okl.Cr. 216, 232 P.2d 949, wholly failed. If, as therein found to have been established, there was expressed prejudice against this defendant, we would grant relief. But it clearly appears herein there was no discussion of the specific case before trial, and that the juror did not know the parties and expressed no opinion as to the merits of the case, hence it would constitute a perversion in the law to grant relief on the basis urged herein. Particularly is this true in view of the fact that no ground for disqualification under the law was developed on voir dire examination, establishing ground for challenge propter defectum for either bias or partiality. Queenan v. Territory, 11 Okl. 261, 71 P. 218, 219, 61 L.R.A. 324; Stevens v. State, supra, John v. State, supra.

The voir dire examination of Donald A. Napier reads as follows:

"Q Donald, do you—did you know Edward McGowan during his lifetime? A No, sir.

"Q Do you know Cora Lea Wagers? A No

"Q Do you know any of the Wagers family? A No.

"Q Have you heard of this case before? A No, I haven't read very little, hardly anything about it. I've just heard of it, but that's all.

"Q you just knew it existed? A That's all.

"Q And from what you've heard you didn't form or express any opinion as to how you should decide what should be done, did you? A No.

"Q And at this time you have a free and open mind? A Yes, sir.

"Q You don't feel that there's anything that disqualifies you from sitting as a juror and rendering a fair and impartial verdict to—to both the State and the defendant? A I do not.

"Mr. Thompson [County Attorney]: I pass the juror.

"Mr. Miller [Attorney for Defendant]: You covered the ground. I don't care to ask any more questions further."

In John v. State, supra, this Court said:

"It is the duty of the defendant to question the jurors on their voir dire as to their qualifications; and if he fails to do so, he waives any objections on that point, even though the disqualification is unknown to him until after the rendition of the verdict. The granting of a new trial in such case is a matter of discretion."

Cited in support of this rule is Cooper v. State, 27 Okl.Cr. 278, 226 P. 1066; Perry v. State, 38 Okl.Cr. 202, 259 P. 657; Spratt v. State, 55 Okl.Cr. 1, 23 P.2d 223; Ball v. State, 47 Okl.Cr. 145, 286 P. 808; Stouse v. State, 6 Okl.Cr. 415, 119 P. 271; Stevens v. State, supra.

In addition to the foregoing on the rule, see Vanderslice v. State, 59 Okl.Cr. 192, 57 P.2d 267, paragraphs 6 and 7 of the syllabus; and to the same effect is Giles v. State, 70 Okl.Cr. 72, 104 P.2d 975.

In Ball v. State, supra, the rule was announced:

"A verdict will not be set aside for reasons that would be sufficient to disqualify on a challenge for cause· which existed before the juror was sworn, but which was unknown to the accused until after the verdict, unless it appears from the whole case that the accused suffered injustice from the fact that the juror served in the case."

In the body of the opinion it was further said:

"Where a new trial is asked for upon the ground that a juror who served upon the jury was prejudiced against the defendant and testified falsely upon his voir dire, which prejudice and false evidence was unknown to the defendant prior to the rendition of the verdict, to entitle the defendant to a new trial it must not only be shown that said juror was prejudiced, but it must also appear that the defendant suffered an injustice by reason of the said juror having served on said jury. It not appearing from the record that the defendant suffered any prejudice because the juror Minton served in the trial of the case, the motion for new trial was properly overruled on that ground."

There is no such showing of prejudice against this defendant in this record.

The case of Stouse v. State, supra, is a much stronger situation than the one presented herein. This Court said therein, in syllabus 5:

"Where, in a motion to set aside the verdict and grant a new trial, an attempt is made to show that one of the jurors was prejudiced against the accused, and an affidavit is attached to the motion showing prejudgment statements by a juror, and the state files a controverting affidavit of the juror wherein he denies that he made any such statements, in the absence of a showing of abuse of discretion, the

decision of the trial court will not be disturbed."

In the body of the opinion, this Court said:

"It is well settled that, as a general rule, a verdict will not be set aside for reasons that would be sufficient to disqualify on a challenge for cause which existed before the juror was sworn, but which were unknown to the accused until after the verdict, unless it appears from the whole case that the accused suffered injustice from the fact that the juror served in the case. The juror denies that he made any such statement, and the verdict returned, not only corroborates him, but is almost conclusive of the fact that the defendants were tried by a fair and impartial jury."

Such is the situation in the case at bar. The statements attributed to the juror Napier in light of his explanations and denials bring the case squarely within the Stouse case and the Smith v. State case, quoted with approval in the Stouse case:

"The identical question here presented was considered in the case of Smith v. State [5 Okl.Cr. 282] 114 Pac. 350, wherein this court said:

" 'These affidavits presented a question of fact which was submitted for determination to the trial court. The judge who tried this case for many years had resided in Coal County, and was in a much better condition to determine as to whether the juror or the parties whose affidavits were filed in behalf of the appellant were the most credible. The mere fact that two parties attempted to impeach a juror does not by any means settle the question of credibility as between such parties and the juror. If it did, but few verdicts could be sustained, because in almost any case it would be possible to find two or more persons who would make affidavits impeaching a juror. In passing upon this very question, the Supreme Court of Texas in the case of Gilleland v. State, 44 Tex. 357, said: "It is true that there are two affidavits in support of the motion and one in rebuttal, but we do not think that the decision of the question presented by the motion should necessarily depend upon the mere number of affidavits on one side over the other." The question of credibility was one to be determined by the trial court; and, in the absence of a showing that this discretion was abused it cannot be reviewed here. There is nothing in this record to indicate any abuse of discretion on the part of the trial judge.' "

Certainly these are the rules in a case where the proof wholly failed to establish expressed prejudice against the defendant.

The Court was inclined to consider some modification of the judgment and sentence herein, but in view of the testimony of the accused relative to the commission of the crime, neither the law nor the facts would permit this to be done. Nevertheless, we are of the opinion that under the record in this case, the attention of the Pardon and Parole Board should be called to the circumstances and conditions involved in the case, so that they may give the matter their earnest attention, and grant whatever relief they may decide the case warrants.

Under the foregoing authorities, the judgment and sentence imposed by the district court of Cherokee County is affirmed.

NIX, P. J., and BUSSEY, J., concur.